UNITED STATES of America, Plaintiff,

v.

David James QUIGLEY, Defendant.

No. 1:91:CR:146–02.

United States District Court,
W.D. Michigan.

March 19, 1993.

1218

Timothy I. Miner, Grand Rapids, MI, for defendant.

Donald Daniels, John A. Smietanka, U.S. Atty., Grand Rapids, MI, for plaintiff.

## OPINION

ENSLEN, District Judge.

The matter before the Court is the sentencing of defendant David Quigley. When Mr. Quigley was nineteen years of age, he and two other defendants assembled pipe bombs with timing devices and/or fuses. These pipe bombs were then placed under motor vehicles, each time at approximately 1:00 a.m., and detonated for the purpose of damaging or destroying the vehicles. On one occasion, Mr. Quigley picked up a bomb the defendants constructed and it detonated in his hand, injuring him and damaging his parents' home. One of the vehicles the defendants damaged was a station wagon used by a business to transport mail to and from the United States Post Office, rendering it a vehicle used in interstate commerce.

On April 20, 1992, Mr. Quigley was found guilty by jury verdict of Counts One through Nine of an original ten count indictment.[1] All of the counts concerned the creation, possession, and/or registration of an illegal firearm with the exception of Counts Four and Five, which contain the statutes at issue in this opinion. Count Four (Aiding and

---

1. The indictment charged the following: Count One—Conspiracy to Possess and Detonate Unregistered Destructive Devices (Pipe Bombs) in violation of 18 U.S.C. § 371; Counts Two and Six—Aiding and Abetting in the Making of a Firearm (a Pipe Bomb) in violation of 18 U.S.C. § 2 and 26 U.S.C. § 5822, 5845, and 5861(f); Counts Three and Seven—Aiding and Abetting in the Possession of an Unregistered Firearm (Pipe Bomb) in violation of 18 U.S.C. § 2 and 26 U.S.C. §§ 5845, 5861(d); Count Four—Aiding and Abetting in the Detonation of a Vehicle in violation of 18 U.S.C. §§ 2, 841, and 844(i); Count Five—Aiding and Abetting in the Use, Possession and Carrying of a Destructive Device During the Commission of a Crime of Violence in violation of 18 U.S.C. §§ 2, 921, and 924(c); Count Eight—Making a Firearm (Pipe Bomb) in violation of 26 U.S.C. §§ 5822, 5845, and 5861(f); and Count Nine—Possession of Unregistered Firearm (Pipe Bomb) in violation of 26 U.S.C. §§ 5845 and 5861(d).

Abetting in the Detonation of a Vehicle) charged violation of 18 U.S.C. § 844(i), and Count Five (Aiding and Abetting in the Use, Possession and Carrying of a Destructive Device During the Commission of a Crime of Violence) charged violation of 18 U.S.C. § 924(c).

In accordance with the Sentencing Guidelines, Counts 1–4 and 6–9 were grouped, producing a sentencing range of 41–51 months. In addition, Count 5, 18 U.S.C. § 924(c), calls for a mandatory sentence of 30 years. Therefore, upon initial calculation, the sentencing range for malicious destruction of motor vehicles with a pipe bomb is between 33 years and 5 months and 34 years and 3 months. However, I have determined that Mr. Quigley may not be sentenced under 18 U.S.C. § 924(c). The relationship between 18 U.S.C. § 844(i) and 18 U.S.C. § 924(c) is an issue of first impression in the Sixth Circuit.[2]

### The Statutes

18 U.S.C. § 844(i) states:

Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not more than ten years or fined not more than $10,000, or both.....

It is important to note that while 844(i) contains an enhancement penalty if injuries or death result from the fire or explosion, it does not contain an "enhancement" for use of an explosive. The means of destruction, use of fire or an explosive, is defined as an element of the crime.

18 U.S.C. § 924(c)(1) states:

Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years, and if the firearm is a short-barreled rifle, or short-barreled shotgun to imprisonment for ten years, and if the firearm is a machine gun, or a destructive device, or is equipped with a firearm silencer or firearm muffler, to imprisonment for thirty years.... Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person convicted of a violation of this subsection, nor shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment including that imposed for the crime of violence or the drug trafficking crime in which the firearm was used or carried. No person sentenced under this subsection shall be eligible for parole during the term of imprisonment herein.

§ 924(c)(3) defines "crime of violence" as a felony which has as an element of the use, attempted use, or threatened use of force against the person or property of another, or that by its nature, involves a substantial risk that physical force against the person or

---

**2.** While three appellate cases affirm convictions of persons charged with violating both 924(c) and 844(i), none of these cases discuss the consistency of the two statutes. *United States v. Moran,* 845 F.2d 135 (7th Cir.1988) (considering challenge to the definition of "interstate commerce," and the necessity of written findings in response to presentence report objections); *United States v. Arvanitis,* 902 F.2d 489 (7th Cir.1990) (considering challenge to effectiveness of counsel, calculation of restitution, and admission of hearsay); *United States v. Hedgcorth,* 873 F.2d 1307 (9th Cir.1989) (considering challenge to definition of "destructive device," scope of defendant's examination of a witness, and admissibili-

ty of material written by defendant), *cert. denied,* 493 U.S. 857, 110 S.Ct. 164, 107 L.Ed.2d 122 (1989).

I am not prepared to read a reasoned endorsement into the silence of the Seventh and Ninth Circuits on this point, and for the reasons discussed *infra,* I believe that they should not have permitted the statutes to be used in tandem. It appears that only one of these appellate cases, *Moran,* was preceded by a written decision at the sentencing level. For a discussion of the district court's consideration of the interaction of the statutes in *Moran,* see *infra* under the heading "The Multiplicity Argument."

property of another may be used in the course of committing the offense.

### § 844(i) Is An Insufficient Predicate for § 924(c)

The first reason I believe that Mr. Quigley cannot be sentenced under § 924(c) in this case is based on no intrinsic failing of either § 844(i) or § 924(c). Instead, it is based on their precise relationship to one another in this case: that of predicate offense and compound offense. My contention is simply that these two particular statutes may not be juxtaposed.

Several circuits have held that § 924(c) authorizes cumulative punishment for crimes in which the use of a weapon provides an enhanced penalty, or in which it is not necessary to prove the use of a weapon in order to establish a violation of the statute. These cases further stand for the proposition that Congress' authorization of cumulative punishment in these circumstances is constitutional. *E.g., United States v. Powell,* 894 F.2d 895 (7th Cir.), *cert. denied,* 495 U.S. 939, 110 S.Ct. 2189, 109 L.Ed.2d 517 (1990) (drug trafficking); *United States v. Lanzi,* 933 F.2d 824 (10th Cir.1991) (bank robbery); *United States v. Browne,* 829 F.2d 760 (9th Cir.1987), *cert. denied,* 485 U.S. 991, 108 S.Ct. 1298, 99 L.Ed.2d 508 (1988) (bank robbery); *United States v. Shavers,* 820 F.2d 1375 (4th Cir.1987), *aff'd after remand,* 842 F.2d 1293 (4th Cir.1988) (bank robbery); *United States v. York,* 830 F.2d 885 (8th Cir.1987), *cert. denied,* 484 U.S. 1074, 108 S.Ct. 1047, 98 L.Ed.2d 1010 (1988) (bank robbery); *United States v. Springfield,* 829 F.2d 860 (9th Cir.1987) (involuntary manslaughter).

I do not question these holdings. However, none of the opinions cited above address the novel circumstance presented by this case: the interaction between § 924(c) and a statute which makes the use of a particular weapon *an element* of the underlying offense, such that if no weapon is used, there is no violation of the statute.

§ 924 clearly defines a crime separate from the underlying offense. *Simpson v. United States,* 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978). Therefore, an underlying crime such as § 844(i) is not a lesser included offense of § 924(c). Instead, the relationship between § 924(c) and its underlying offenses is that of compound offense and predicate offense.

§ 844(i) is not a proper predicate offense for § 924(c). Chief Justice Rehnquist explained why this permutation is impermissible when he used § 924(c) to illustrate a point concerning statutory construction and the rule of *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306. In *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), then Justice Rehnquist stated:

> [T]he Blockburger test, although useful in identifying statutes that defined greater and lesser included offenses in the traditional sense, is less satisfactory, and perhaps even misdirected, when applied to statutes defining 'compound' and 'predicate' offenses. Strictly speaking, two crimes do not stand in the relationship of greater and lesser included offenses unless proof of the greater necessarily entails proof of the lesser.... On the other hand, two statutes stand in the relationship of compound and predicate offenses when one statute incorporates several other offenses by reference and compounds those offenses *if a certain additional element is present.* To cite one example, 18 U.S.C. 924(c)(1) states that '[w]hoever ... uses a firearm to commit any felony for which he may be prosecuted in a court of the United States ... shall ... be sentenced to a term of imprisonment for not less than one year nor more than ten years.' Clearly, any one of a plethora of felonies could serve as the predicate for a violation of § 924(c)(1).

*Id.* at 708–09, 100 S.Ct. at 1446–47 (Rehnquist, J., dissenting) (emphasis added). Therefore, according to Chief Justice Rehnquist, § 924(c) is a "compound" offense. Although many felonies may serve as its predicate, § 924(c) cannot compound predicate offenses unless an *additional element* is present. The additional element in the case of § 924(c) is a firearm, as is the case when the predicate offense is robbery or drug trafficking.

Therefore, while I agree that "in the case of § 924(c)(1) Congress made its intention explicit, stating unequivocally that the pun-

ishment for violation of that statute should be imposed 'in addition to the punishment provided for the commission of [the predicate] felony'", *Whalen,* 445 U.S. at 709, 100 S.Ct. at 1447 (Rehnquist, J. dissenting), § 844(i) is not a proper predicate felony to be used in conjunction with § 924(c). In the case of § 844(i), § 924(c) adds no additional element: the use of an explosive is an element of the predicate offense. As a result, I conclude that § 924(c) may not be applied in order to compound a § 844(i) offense.

This holding is supported by the analysis of *Garrett v. United States,* 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985). In that case, the Court was "required ... to consider the relationship between substantive predicate offenses and a CCE [continuing criminal enterprise statute, 21 U.S.C. § 848]." *Id.* at 794–95, 105 S.Ct. at 2419. The Court first concluded that Congress intended CCE to be a separate offense, and that it intended to permit prosecution for both the predicate offenses and the CCE offense. It then went on to determine that a prosecution for a CCE offense after an earlier prosecution for a predicate offense does not violate the Double Jeopardy Clause of the Fifth Amendment. The linchpin of its analysis on this point was that

"the CCE offense is not, in any common sense or literal meaning of the term, the 'same' offense as one of the predicate offenses.... [*In addition to finding commission of the substantive offense,*] [t]he CCE offense requires the jury to find that the predicate offense was a part of a continuing series of predicate offenses undertaken by the defendant in concert with five or more persons, that the defendant occupied the position of an organizer or manager, and that the defendant obtained substantial income from the continuing series of violations."

*Id.* at 786, 105 S.Ct. at 2415 (emphasis added).

As was the case with the statutes in *Garrett,* the typical § 924(c) predicate offense (a crime of violence or a drug trafficking crime) does not require proof of the use of a weapon to establish the crime. Application of the compounding statute requires further proof: the use of a weapon. However, § 844(i) is unique among § 924(c) predicates, because

the use of an explosive does not "add" anything to the crime. Instead, use of an explosive is an original element of the crime Congress chose to define. Therefore, § 844(i) may not be used as a predicate offense for § 924(c).

### The Multiplicity Argument

One way of identifying the defect in the charges against Mr. Quigley I have discussed above is to say that § 844(i) is an improper predicate offense for § 924(c). Another way of expressing why § 924(c) cannot be used in conjunction with § 844(i) is to say that the use of § 924(c) in this situation violates the prohibition against multiplicitous charges. According to the Sixth Circuit,

the 'multiplicity' doctrine [ ] is related to double jeopardy multiple punishment analysis.... Multiplicity is the charging of a single offense in several counts or in several charging instruments. The danger of a multiplicitious indictment is that it may violate double jeopardy by resulting in multiple sentences or punishments for a single offense, *United States v. Hearod,* 499 F.2d 1003, 1005 (5th Cir.1974), or that it may prejudice the defendants by causing the jury to convict on a five count solely on the strength of evidence on the counts remaining.

*Wieland v. Brown,* 1990 WL 172689 at *5, 1990 U.S.App. LEXIS 19856 at *14 (unpublished opinion of the 6th Cir.). *See also, United States v. Kennedy,* 726 F.2d 546, 547–48 (9th Cir.), *cert. denied,* 469 U.S. 965, 105 S.Ct. 365, 83 L.Ed.2d 301 (1984) (quoting *United States v. Glanton,* 707 F.2d 1238 (11th Cir.1983) (The traditional test of multiplicity "determines whether each count 'requires proof of a fact which the other does not.'")

The one court which has considered the multiplicity argument in the context of § 844(i) and § 924(c) rejected the defendant's challenge. In *United States v. Moran,* 1987 WL 5418, 1987 U.S.Dist. LEXIS 248 (unpublished opinion, N.D.Ill.), the defendant moved to dismiss the § 844(i) and § 924(c) counts of his indictment because no additional proof was required to establish the latter after a violation of the former was proven. In the course of three paragraphs of an unpublished opinion, the district court recognized that two counts in an indictment are

not multiplicitous if each count requires proof of a fact which the other does not. *Id.*, 1987 WL 5418 at *1, 1987 U.S.Dist. LEXIS 248 at *3, citing *United States v. Marquardt*, 786 F.2d 771, 778 (7th Cir.1986). The court concluded that a § 844(i) violation contains elements distinct from those required to establish a § 924(c) violation, and a § 924(c) violation *could* be proven with elements distinct from § 844(i).

In order to achieve this result, the *Moran* court detached the § 924(c) offense from its predicate, and looked to the face of the statutes individually. It relied on *United States v. Woodward*, 469 U.S. 105, 105 S.Ct. 611, 83 L.Ed.2d 518 (1985), to justify this maneuver, which allowed it to conclude that "a violation of § 924(c) could be proved without necessarily proving a case of property destruction by fire or an explosive under § 844(i)". *Id.*

The *Moran* court's reliance on *Woodward* and *Marquardt* was misplaced, because both of these cases analyzed independent statutes. In *Woodward*, the circuit court ruled that a defendant could not be punished for violation of a statute prohibiting false statements to an agency of the U.S. and willfully failing to report that he was carrying over $5,000 into the U.S. The circuit court's conclusion was based on the fact that the same conduct— answering "no" to a form question—formed the basis of each count. The Supreme Court reversed, because it disagreed with the circuit court's finding that the false statement felony was a lesser included offense of the currency reporting statute. The Court concluded that proof of a currency reporting violation does not necessarily include proof of a false statement offense, despite the fact that in this case it did.[3] Similarly, *Marquardt* involved two statutes which could be prosecuted independently.[4]

In contrast to the statutes considered in *Woodward* and *Marquardt*, § 844(i) and § 924(c) are not independent statutes. A § 924(c) charge cannot be sustained without a predicate offense. Therefore, while the *Moran* court's statement that "a violation of § 924(c) could be proved without necessarily proving a case of property destruction by fire or an explosive under § 844(i)" is technically true, proof of a violation of § 924(c) "must necessarily" prove destruction by fire or explosive when it is predicated on § 844(i).

■ When statutes share a predicate/compound relationship, I believe that the *Woodward*, *Marquardt* and *Moran* courts' approach should be rejected. While it might be appropriate for a court to consider the statutes instead of the facts of the case, it should look at the statutes which are actually being used in tandem, and it should focus on those portions of the statute *applicable* to the case. In this situation, that analysis must lead to the conclusion that charges of both § 844(i) and § 924(c) are multiplicitous.[5]

3. My assertion that the statutes were "independent" is also supported by the *Woodward* court's observation that "Congress' intent to allow punishment under both [statutes] is shown by the fact that the statutes 'are directed to separate evils.' [citation omitted]"

4. "The crime of willful misapplication of funds under § 657 is entirely separate and distinct from the crime of making false entries in the records of a savings and loan under § 1006. The prosecution is not required to prove willful misapplication of funds in order to establish a charge of false entry, nor is the making of a false entry necessary for conviction on a charge of willful misappropriation of bank funds.... Accordingly, as the crime of false entry requires proof of an element (a false entry) not necessary to prove willful misapplication of funds ... [the charges] are not multiplicitous." *Marquardt*, 786 F.2d at 778–79.

5. My disagreement with the *Moran* court's analysis is further reinforced by the Supreme Court's approach in *Taylor v. United States*, 495 U.S.

575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). The *Taylor* Court was asked to define what crimes constituted a "burglary," as the term was used to identify a category of predicate offense for purposes of a compounding career criminal statute, § 924(e). In order to identify appropriate predicate crimes in this category, the *Taylor* Court instructed *sentencing courts to ignore the* facts of the prior convictions. Instead, it directed sentencing courts to examine the "elements of the statute of conviction" in order to determine whether a prior conviction provided a sufficient predicate for § 924(c), which required imposition of a mandatory 15 year sentence. *Id.* at 601, 599, 588, 110 S.Ct. at 2159, 2158, 2152.

In this case, one of the "elements of the statute of conviction" is the use of an explosive. Therefore, the fact that a § 924(c) violation "may" be proved without proof of an explosive in some other case is irrelevant to the present inquiry. When saddled to § 844(i) as the predicate offense, a § 924(c) violation cannot be proved without proof of an explosive.

I believe that the pairing of charges under § 844(i) and § 924(c) is multiplicitous. My conclusion that the *Moran* court's analysis of this matter is incorrect is supported by *Ball v. United States*, 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985). In *Ball*, the Supreme Court concluded that a felon could not be convicted of both receiving a firearm in violation of 18 U.S.C. § 922(h) and possessing it in violation of 18 U.S.C.App. § 1202(a)(1). Because the statutes were contained in the same congressional act, the Court had more complete legislative history than exists in this case, which involves statutes from two different acts, enacted at different times. However, relying largely on the drafting and effect of the statutes themselves, the Court concluded,

> it is clear that Congress did not intend to subject felons to two convictions; proof of illegal receipt of a firearm *necessarily* includes proof of illegal possession of that weapon. '[W]hen received, a firearm is necessarily possessed[,]' [citation omitted] [although] the converse may not be true.
>
> · * * * * * *
>
> In short, we are persuaded that Congress had no intention of creating duplicative punishment for one limited class of persons falling within the overlap between the two Titles—convicted felons who receive firearms and who, by definition, possess them. The independent, but not overlapping statutes simply are not 'directed to separate evils' under the circumstances. [citation omitted]

*Id.* at 862, 863–864, 105 S.Ct. at 1672, 1673. I believe that this passage describes the circumstance at bar. Proof of an § 844(i) violation necessarily includes proof of a § 924(c) violation, and, under these circumstances, these statutes are not directed to separate evils.

As a result, I believe that the remedy directed by *Ball* must be applied in this case:

> Having concluded that Congress did not intend petitioner's conduct to be punishable under both [statutes], the only remedy consistent with the congressional intent is for the district court, where the sentencing responsibility resides, to exercise its discretion to vacate one of the underlying convictions. The remedy of ordering one of the sentences to be served concurrently with the other cannot be squared with Congress' intention. One of the convictions, as well as its concurrent sentence, is unauthorized punishment for a separate offense.

*Id.* at 864, 105 S.Ct. at 1673.

### Conflicting Instruction From Congress and Its Surrogate, the Sentencing Commission

The only case which gives serious consideration to the question of the interaction of § 844(i) and § 924(c) is *United States v. Swapp*, 719 F.Supp. 1015 (D.Utah 1989), *aff'd* as to Jonathan Swapp and *aff'd and remanded* as to Addam Swapp, 934 F.2d 326 (10th Cir.1991) (unpublished opinion).[6] The *Swapp* defendants were charged with violations of § 844(i) and § 924(c) in conjunction with the bombing of a Mormon church.

The *Swapp* court refused to sentence on the § 924(c) count for two reasons.[7] First, it argued that because no additional proof is necessary to prove a § 924(c) violation when the predicate offense is § 844(i), the imposition of a § 924(c) penalty would be unlawfully cumulative. Secondly, the court offered an interesting argument concerning the inter-

---

**6.** There is one other case in which a court refused to apply § 924(c) because it conflicted with the predicate statute, but this did not involve § 844(i). In *United States v. Eagle*, 539 F.2d 1166, 1172–73 (8th Cir.1976), *cert. denied*, 429 U.S. 1110, 97 S.Ct. 1146, 51 L.Ed.2d 563 (1977), the underlying statute, 18 U.S.C. § 1153, brought certain major crimes between Native Americans within federal jurisdiction, including the crime charged in *Eagle*, assault with a dangerous weapon. However, § 1153 provided that certain crimes it defined, including assault with a dangerous weapon, be defined and punished in accordance with the laws of the State in which they were committed. Therefore, the court reasoned, to allow a § 924(c) prosecution to be based on a § 1153 violation would conflict with this purpose, and application of a federal penalty would thwart the goals of § 1153. Therefore, the court vacated the § 924(c) sentence.

**7.** The court asserted that § 924(c) required a mandatory five year sentence, instead of the thirty year sentence it appears to require for the use of destructive devices. The only explanation for this result is that the crime was committed before the 1988 amendment to § 924(c).

play between the Sentencing Guidelines and mandatory minimums. It noted that U.S.S.G. § 2K2.4(a) anticipated the use of enhancement statutes.[8] When § 924(c) is charged, Guideline § 2K2.4(a) instructs sentencing courts to disregard the enhancements the Guidelines provide for the use of a weapon when calculating the sentence for the underlying offense.[9] Therefore, in one sense, § 924(c) "replaces" the enhancement. The policy behind this practice is that the use of the weapon should only be counted once: either in the sentence for the substantive crime, or in the form of an enhancement statute like § 924(c), but not both places. As the Background Note to Guideline § 2K2.4 states, "[t]o avoid double counting, when a sentence under this section is imposed in conjunction with a sentence for an underlying offense, any specific offense characteristic for firearm discharge, use, or possession is not applied in respect to such underlying offense."[10] The Swapp court noted that it was "left with the impossible task of trying to reconcile conflicting directions given to the court by Congress and by its surrogate, the Commission." Id. at 1020. From this fact, it concluded that the statutes which provide the Guideline sentence and § 924(c) were in conflict, and the court could not follow both.

I agree with the Swapp court's conflict analysis. Furthermore, I view this conflict as additional evidence that Congress did not anticipate the use of § 924(c) with a statute like § 844(i). In short, § 844(i) is an anomaly. Through its surrogate the Sentencing Commission, Congress has instructed sentencing courts to avoid "double counting" in general, and has said specifically that the use of a firearm should not be counted twice. However, when the predicate crime is a violation of § 844(i), it is impossible to follow that instruction and also follow the instruction of § 924, because use of an explosive is an element of the predicate offense.

The result of this conflict in statutes is the same as that of the improper predicate and multiplicity analyses above: these statutes cannot be used in conjunction.

### The Choice Between § 844(i) and § 924(c)

■ For the reasons discussed above, I conclude that § 844(i) and § 924(c) cannot coexist. It would be impossible for the government to argue that the element of § 844(i) which requires the use of an explosive is severable, and § 924(c) should somehow be read to "replace" that element. The statutes simply cannot be read in tandem. Therefore, I must choose between them. There are three reasons why I must apply § 844(i), and

---

**8.** "If the defendant, whether or not convicted of another crime, was convicted under 18 U.S.C. § 924(c) or § 929(a), the term of imprisonment is that required by statute." U.S.S.G. § 2K2.4(a).

**9.** Application Note 2 to this sections instructs "[w]here a sentence under this section is imposed in conjunction with a sentence for an underlying offense, any specific offense characteristic for the possession, use, or discharge of a firearm (e.g., § 2B3.1(b)(2)(A)–(F) (Robbery)), is not to be applied in respect to the guideline for the underlying offense."

**10.** U.S.S.G. § 3D1.1 (grouping), Application Note 1 explains this policy using § 924 as an example:

Counts for which a statute mandates imposition of a consecutive sentence are excepted from application for the multiple count rules. Convictions on such counts are not used in the determination of a combined offense level under this Part, but may affect the offense level for other counts. A conviction for 18 U.S.C. § 924(c) ... provides a common example. In

the case of a conviction under 18 U.S.C. § 924(c), the specific offense characteristic for weapon use in the primary offense is to be disregarded in order to avoid double counting. See Commentary to § 2K2.4. Example: The defendant is convicted of one count of bank robbery (18 U.S.C. § 2113), and one count of use of a firearm in the commission of a crime of violence (18 U.S.C. § 924(c)). The two counts are not grouped together, and the offense level for the bank robbery count is computed without application of an enhancement for weapon possession or use. The mandatory five-year sentence on the weapons-use count runs consecutively, as required by law.

See also, U.S. Sentencing Commission, Most Frequently Asked Questions About the Sentencing Guidelines (6th ed. 1992). Question 116 of this manual asks "What should be done when a statute mandates that a term of imprisonment be imposed and that the term of imprisonment run consecutively (e.g., 18 U.S.C. § 924(c))?" The Commission's answer states that the Guideline sentence and the statutory sentence are to run consecutively, however "[t]o avoid double counting, special adjustments to the offense levels and guideline range may be required."

not § 924(c). First, and most significantly, § 924(c) does not completely define a crime: it is dependent upon conviction of a different violent crime. Therefore, as between the two, § 844(i) is able to stand alone; § 924(c) is not. The second reason is an extension of the first. When choosing between two statutes, the more specific statute governs over the more general, even when the more general was enacted later. *Green v. Bock Laundry Machine Co.*, 490 U.S. 504, 524, 109 S.Ct. 1981, 1992, 104 L.Ed.2d 557 (1989); *Simpson v. United States*, 435 U.S. 6, 15, 98 S.Ct. 909, 914, 55 L.Ed.2d 70 (1978). Because § 844(i) contains a precise definition of the elements of a crime, as opposed the more general enhancement provisions of § 924(c), § 844(i) must prevail. Finally, the fact that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity," *United States v. Bass*, 404 U.S. 336, 347, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971), reinforces my conclusion that § 844(i) should be applied in this case.

### Conclusion

The executive branch, through its agent prosecutors, has great discretion in determining what to charge. When those charges are brought pursuant to the Guidelines, the judiciary may guard against the abuse of that discretion through the grouping of offenses. U.S.S.G. Ch. 3, Part D. When the grouping provisions of the Guidelines do not remedy concerns about excessive, abusive, or inappropriate charging, judges may invoke U.S.S.G. Ch. 1, Part A(4), which authorizes sentencing courts to "control any inappropri-ate manipulation of the indictment through use of its departure power." [11]

However, when a penal statute carries a mandatory sentence, these remedies are un-available,[12] and the judiciary has no control over sentencing. In determining whether to charge a § 924(c) violation in addition to its predicate, the prosecutor essentially chooses the sentence. In cases like this, that choice is the difference between a sentence of approximately 3–4 years, and a sentence of 33–34 years. When the stakes are this high, the judiciary must be particularly vigilant to insure both that Congress clearly intended to grant such discretion to the Executive, and if so, that Congress properly enacted its intent into law.[13] In this case, I do not believe that Congress extended this choice to the prosecutor.

Finally, I would like to note that on July 14, 1992, this Court issued an Opinion denying defendants' motion for a judgment of acquittal on double jeopardy grounds. *United States v. Quigley*, 798 F.Supp. 451 (W.D.Mich.1992). Although this Opinion reaches the opposite result as *Quigley*, it does so on different grounds. If this Opinion is perceived to be inconsistent with any part of *Quigley*, this Opinion is intended to control.

For the foregoing reasons, Mr. Quigley's conviction under Count 5 will be vacated. *Ball v. United States*, 470 U.S. at 864, 105 S.Ct. at 1673. As a result of his conviction on the remaining counts, Mr. Quigley is sentenced to a term of 48 months imprisonment.

---

11. For example, in *United States v. Lieberman*, 971 F.2d 989 (3rd Cir.1992), a person was charged with both embezzlement and with evading taxes on the money he had embezzled. Although the Guidelines did not specifically provide for it, the district court "grouped" the charges, so the defendant did not have to serve consecutive sentences. In response to the government's appeal, the Third Circuit stated:

> If we were to hold that district judges have no authority to depart on [the] basis [of count manipulation], it would raise the prosecutor to a position supreme over the district judge vis-a-vis sentencing by virtue of the uncontrolled charging discretion. We believe that the Sentencing Commission did not so intend.…

*Id.* at 998.

12. U.S.S.G. § 3D1.1 (counts carrying mandatory consecutive sentences are exempted from operation of the grouping rules.)

13. "There is great danger in the potential for untrammeled stacking of mandatory minimum counts by a zealous prosecutor, and thus for the thwarting of the policy of grouping. Such stacking could also undermine the intent and purpose of Congress and its surrogate, the Commission, in reaching their professed goal of uniformity of punishment. There is no genuine oversight of the stacking of mandatory minimum charges with these built-in, pre-determined sentences. Congress has great need to mesh Guidelines and non-Guidelines offenses, particularly when such offenses are obviously similar and would ordinarily grouped." *Swapp*, 719 F.Supp. at 1022.

## ORDER

In accordance with the Opinion entered on this date;

**IT IS HEREBY ORDERED** that the prior sentence imposed on defendant David Quigley from the bench on February 16, 1993, and in a judgment dated February 18, 1993, is **WITHDRAWN;**

**IT IS FURTHER ORDERED** that Count 5 of the indictment of David Quigley is **VACATED.**

**IT IS FURTHER ORDERED** that David Quigley is sentenced to 48 months imprisonment. Additional conditions of this sentence are contained in the judgment filed in this case.